IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE UNIVERSAL HEALTH SERVICES, INC., DERIVATIVE LITIGATION | CIVIL ACTION<br>NO. 17-2187 |

## ORDER

**AND NOW**, this 10th day of December 2018, upon consideration of Defendants' Motion to Stay (Doc. No. 53), Plaintiffs' Response in Opposition to Defendants' Motion to Stay (Doc. No. 56), and Defendants' Reply in Support of the Motion to Stay (Doc. No. 58), it is **ORDERED** that Defendants' Motion to Stay (Doc. No. 53) is **DENIED**.[1]

---

[1] Plaintiffs in this action are shareholders of Universal Health Services, Inc., a Delaware corporation. (Doc. No. 1.) On November 5, 2018, Plaintiffs filed an Amended Complaint in the present consolidated shareholder derivative action. (Id.) Plaintiffs allege that UHS officers and directors breached their fiduciary duties to UHS by implementing policies and practices that encouraged UHS facilities to admit mental health patients against their will to maximize insurance payouts. (Id.) In connection with this conduct, UHS is the defendant in a securities fraud class action pending in this Court, captioned Teamsters Local 456 Pension Fund v. Universal Health Services, Inc., Civ. No. 2:17-cv-02817. Additionally, UHS apparently is under investigation by the government for potential violations of the False Claims Act. (Doc. No. 53-2 at 1.) Named as Defendants in the present shareholder derivative suit are Alan Miller, Marc Miller, Robert Hotz, Lawrence Gibbs, Eileen McDonnell, Anthony Pantaleoni, John Herrell, Steve Filton, Debra Osteen, Marvin Pember, Charles Boyle, James Caponi, and Nominal Defendant UHS. (Doc. No. 1.)

On November 9, 2018, Defendants filed the present Motion to Stay and asked the Court to stay the shareholder derivative litigation until the related securities class action and government investigation are resolved. (Doc. No. 53.) In support of their Motion to Stay, they rely upon the fact that on December 15, 2017, the Delaware Court of Chancery stayed a related shareholder derivative suit filed on behalf of UHS. (Id.)

On November 23, 2018, Plaintiffs filed a Response in Opposition to Defendants' Motion to Stay (Doc. No. 56), and on November 30, 2018, Defendants filed a Reply to Plaintiffs' Response. (Doc. No. 58.) For the reasons discussed infra, Defendants' Motion to Stay will be denied.

---

Whether to stay litigation is a matter left to a district court's discretion. See <u>Dentsply Int'l, Inc. v. Kerr Mfg. Co.</u>, 734 F. Supp. 656, 658 (D. Del. 1990) (citing <u>Bechtel Corp. v. Laborers' Int'l Union</u>, 544 F.2d 1207, 1215 (3d Cir. 1976)). In exercising this discretion, a district court must weigh the competing interests of the parties. See <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 255 (1936). In doing so, the court looks at the following factors:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

<u>Amkor Tech. Inc. v. Synaptics, Inc.</u>, No. 15-cv-910, 2016 WL 9331100, at *1 (D. Del. Oct. 25, 2016) (quoting <u>First Am. Title Ins. Co. v. MacLaren, L.L.C.</u>, No. 10-cv-363, 2012 WL 769601, at *4 (D. Del. Mar. 9, 2012)).

The Supreme Court has said that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." <u>Landis</u>, 299 U.S. at 255. Further, "if there is even a fair possibility that the stay for which he prays will work damage to [someone] else," the party requesting the stay "must make out a clear case of hardship or inequity" to prevail. <u>Id.</u> The proponent of the stay bears the burden of establishes its need. See <u>id.</u> at 257; <u>CTF Hotel Holdings, Inc. v. Marriot Int'l, Inc.</u>, 381 F.3d 131, 139 (3d Cir. 2004).

Here, Defendants ask the Court to stay the derivative litigation until the federal securities class action and government investigation are resolved. But it could take several years for the parties to fully litigate the securities class action and for the government to complete its investigation under the False Claims Act. Thus, put another way, Defendants ask the Court to stay this matter for an indefinite duration. Significantly, the Third Circuit has generally denied stays of indefinite duration. See <u>Cheney State Coll. Faculty v. Hufstedler</u>, 703 F.2d 732, 738 (3d Cir. 1983); <u>Germann v. Watts Regulator Co.</u>, No. 1:15-cv-1037, 2015 WL 9182805, at *2 (M.D. Pa. Dec. 17, 2015). To allow such an indefinite stay in this case would "unduly prejudice or present a clear tactical disadvantage" to Plaintiffs. There is at least a fair possibility that Plaintiffs will be harmed by an indefinite stay because of potential loss of evidence. As time goes on, memories fade and witnesses may become unavailable, irrevocably impeding the discovery process. See <u>De'Omilia Plastic Surgery, PC v. Sweeton</u>, No. 12-06415, 2013 WL 6070037, at *4 (D.N.J. Nov. 18, 2013). Defendants argue that discovery in the securities class action would satisfy these concerns. But this is not necessarily true. Although there will be significant overlap in witnesses in the two cases, not all witnesses will be the same and those witnesses that are in fact the same may not be asked questions in the securities class action that Plaintiffs would ask in the derivative litigation.

Additionally, while Defendants argue that the stay requested will simplify the issues in question because they are "largely contingent" on the outcome of the federal securities action, at this point the Court cannot say with certainty that this is true. Defendants are correct that issues in the two cases overlap. (Doc. No. 53-2 at 5-7.) But as Plaintiffs stress, they have

2

alleged damages "separate and apart from those asserted in the Federal Securities Action." (Doc. No. 56 at 18.) For example, Plaintiffs challenge the high compensation paid to individual Defendants, the amount of corporate funds used by UHS to repurchase company shares, and profits received by individual Defendants "following their disposal of artificially inflated UHS stock." (Id.) These concerns, which are crucial to the shareholder derivative suit, are not at issue in the federal securities action. Therefore, granting the requested stay will do nothing to simplify them.

Further, the Court is not convinced that the stay requested is in the company's best interests. The Court acknowledges that allowing the derivative litigation to proceed would draw funds from UHS and might affect its defense in the securities class action. But this will not cause significant harm. Instead, allowing both cases to proceed better promotes judicial economy and efficiency. To stay this matter until the conclusion of the securities class action might in fact subject UHS to duplicative discovery requests. Both cases are in the beginning stages of litigation—discovery has not commenced and the Court has not set trial dates in either matter. Thus, allowing both cases to proceed at this time would allow the parties to coordinate their discovery efforts. What is more, there is concern about the effect of an indefinite stay on UHS. If Plaintiffs' allegations concerning UHS's internal policies and practices are true, a long delay would allow the company's defective internal mechanisms, if any, to continue unchecked.

In support of their Motion to Stay, Defendants heavily rely on the Delaware Chancery Court's decision to stay in the related UHS shareholder derivative suit in Delaware state court. (Doc. No. 53.) See Del. Cty. Emps.' Ret. Fund v. Miller, No. 2017-475 (Del. Ch., filed June 27, 2017). They argue that this Court should stay the present shareholder derivative suit because "nothing special sets this derivative case apart from the Delaware Action." (Doc. No. 58 at 3) (emphasis in original). The Court disagrees. Before the Chancery Court was a state derivative suit that paralleled a federal securities class action. (Doc. No. 53-4.) The cases were not before the same court or the same judge, and thus, the Chancery Court could not effectively manage both cases. Here, though, both cases are before the same judge in this Court. Any discovery issues can be resolved in a consistent manner or even consolidated to promote efficiency. See Smith ex rel. Apollo Grp., Inc. v. Sperling, No. CV-11-0722-PHX-JAT, 2012 WL 79237, at *3 (D. Ariz. Jan. 11, 2012) (noting that allowing both the securities class action and the derivative case to proceed at the same time would actually conserve resources where the cases were both in early stages and discovery could be consolidated). This difference sets this federal derivative suit apart from the state derivative suit in Delaware.

BY THE COURT:


/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.

---

Upon reviewing the relevant factors and weighing the risk of harm to both parties, the Court is unconvinced that denying this stay will result in hardship to the Defendants.  On the contrary, it is possible that granting the Motion to Stay would unduly prejudice Plaintiffs and give Defendants an unfair tactical advantage.  Further, judicial economy and efficiency dictate that the Court deny the Motion to Stay.  For those reasons, the Court will deny Defendants' Motion to Stay.  (Doc. No. 53.)