**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE UNIVERSAL HEALTH SERVICES, INC., DERIVATIVE LITIGATION | : : : : : : : : : : | CIVIL ACTION NO. 17-02187 HONORABLE JOEL H. SLOMSKY |
| This Document Relates to: ALL ACTIONS | | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO AMEND THE COURT'S MARCH 29, 2018 ORDER AND APPOINT ADDITIONAL CO-LEAD PLAINTIFFS AND CO-LEAD COUNSEL**

Amalgamated,[1] Cambridge, and Clinton's joint, and otherwise unopposed, Motion to have the latter two plaintiffs and their counsel added to the leadership structure in this case demonstrated both the value of having the three institutional investors and their counsel as co-leads and the cooperative manner in which they have worked on this case. Although Defendants initially took "no position" on who should serve as lead plaintiff or lead counsel in this derivative action, they now, in a somewhat unprecedented move,[2] oppose the Motion, arguing that Proposed Co-Lead

---

[1] All capitalized terms herein have the same meanings and definitions as those set forth in opening brief in support of the Proposed Co-Lead Plaintiffs' Motion (ECF No. 63) (hereinafter, the "Opening Brief").

[2] As Proposed Co-Lead Plaintiffs noted in the Opening Brief (ECF No. 63 at 10 n.7), Defendants lack standing to challenge Proposed Co-Lead Plaintiffs' present Motion. *See, e.g.*, *Blake Partners, Inc. v. Orbcomm, Inc.*, No. 07-4517 (WHW), 2008 WL 2277117, at *3-4 (D.N.J. June 2, 2008) (finding in the PSLRA context that "Defendants lack standing to formally oppose [plaintiffs'] motion for appointment as lead counsel[,]" and "the weight of authority denying standing make[s] 'sense because defendants will rarely have the best interests of the class at heart'"); *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 575 n.2 (D.N.J. 2001) ("[T]he majority of courts that have addressed the issue have held that defendants lack standing to object to the adequacy of lead plaintiffs and their chosen counsel[.]").

Plaintiffs have not demonstrated their value to Universal's shareholders and that their addition would inevitably introduce discord and inefficiencies into this litigation. They are wrong on both counts.

First, Proposed Co-Lead Plaintiffs have already proven their mettle in vigorously prosecuting their Section 220 demand through trial, causing them to obtain valuable, additional corporate records that are now incorporated in the operative CAC in this case. Indeed, in light of these efforts, Amalgamated invited Proposed Co-Lead Plaintiffs to join as co-leads in order to present the best possible case and maximize recovery for the Company. Second, Proposed Co-Lead Plaintiffs and Amalgamated already have proven that they work well together. They cooperatively obtained consent of Universal to share the Section 220 documents, so that they could work together, jointly drafted the CAC, and jointly defeated Defendants' ill-fated motion to stay this case. Indeed, Defendants cannot and do not point to a single manner in which the process has been anything but beneficial to the case.

Amalgamated, Cambridge, and Clinton look forward to continuing to jointly litigate this action and ask that the Court deny Defendants' request to pick their adversaries and grant the Motion in full.

**I.  ARGUMENT**

    **A.  Proposed Additional Co-Lead Plaintiffs Have Already Benefited Universal's Shareholders, Which Amalgamated Recognizes**

Proposed Co-Lead Plaintiffs have shown good cause to add Cambridge, Clinton, and their respective counsel to the leadership structure. As Amalgamated has recognized, Proposed Co-Lead Plaintiffs and Counsel[3] already have benefited Universal's shareholders by pressing for the production of a significant number of additional Company records from Universal through a

---

[3]     "Proposed Co-Lead Counsel" collectively includes S+S, BLB&G, and G&E.

successful Section 220 trial before the Chancery Court and incorporating those records into the CAC, further positioning Universal's shareholders to stave off Defendants' challenge to the pleadings.

Notably, Amalgamated's own efforts under Section 220, on which Cambridge then expanded, was the very reason the Court appointed Amalgamated Lead Plaintiff in the first place. *See* ECF No. 42 at 10 ("Of all of the derivative plaintiffs, only Amalgamated investigated the alleged wrongdoing at issue by reviewing confidential corporate records from Universal pursuant to a Section 220 books and records inspection[,]" which records "will be a significant advantage in helping plaintiffs in the consolidated case satisfy the 'demand futility' pleading standard."). It is perplexing that Defendants would take the position that Cambridge's efforts to procure additional germane Company records should somehow fail to rise to good cause for its addition to the leadership structure – to which Amalgamated consents.

Nonetheless, Defendants belittle Cambridge's one-and-a-half year effort to obtain additional Company records,[4] claiming that the 220 Litigation was protracted only because of a fight over the confidentiality agreement to govern the production. The 220 Litigation, of course, was more than a fight over a confidentiality agreement. Indeed, months after entry of the protective order in that case, Universal continued to refuse to expand the scope of its document production, forcing Cambridge to take the matter to trial. At trial, the Chancery Court ruled largely in Cambridge's favor, ordering Universal to produce, for example: "documents that address

---

[4] Defendants' complaint that Clinton did not serve a separate Section 220 demand is beside the point. G&E, which is Clinton's counsel, vigorously pursued the 220 Litigation on Cambridge's behalf for one-and-a-half years with BLB&G. Clinton, with Defendants' consent, then obtained full access to the Section 220 document production, reviewed the same, and assisted in drafting and verified the CAC as an equal (proposed) Co-Lead Plaintiff. In short, Clinton received the full set of Section 220 documents that Cambridge and Amalgamated obtained.

corporate-level budgets and strategies that track patient admissions and the compliance documents that involve presentations to the audit committee"; "strategic high-level plans that were developed by senior management"; "hotline and call reports" received by the compliance committee; and "documents that indicate relationships with the controller, indicate transactions between directors and the company, and look at the nominating committee minutes going back three years, and produce those corporate records that are cogent to this search." Declaration of Thomas L. Laughlin, IV, Ex. A, 220 Litigation Trial Tr. at 29:11-14, 44:20-21, 46:10-16, 49:2-14, 68:11-16. Defendants then produced thousands of additional pages. Their characterization of Cambridge's efforts having resulted in but a "handful of" documents that, in Defendants' view, are unimportant, is simply wrong.

### B. Amalgamated, Cambridge, Clinton, and Their Respective Counsel Have Demonstrated Their Ability to Work Together Cooperatively and Efficiently

Proposed Co-Lead Plaintiffs and Counsel have a track record of working together cooperatively and efficiently in this case. Indeed, Amalgamated, Cambridge, and Clinton worked side-by-side for months reviewing the newly produced Company records and putting together the CAC that accounts for those records. When Defendants sought an (essentially) indefinite stay of this action, Amalgamated, Cambridge, and Clinton again joined forces and successfully opposed that motion. *See* ECF Nos. 56, 61. Moreover, Amalgamated, Cambridge, and Clinton are all sophisticated institutional investors, who are like-minded in their pursuit of the best possible case and recovery on behalf of the Company. Defendants stoking fears about the "possibility of discord" and "fractious leadership" where multiple co-lead plaintiffs and counsel direct a derivative litigation (ECF No. 65 at 4-5) is refuted by the record in this case and track record of the Proposed Co-Lead Plaintiffs and Counsel.

The substantial weight of case law also supports multi-plaintiff and counsel leadership structures. Time and again, courts across the country, following the analysis of the *McNamara* factors laid out in the Opening Brief, have appointed multiple plaintiffs and their respective counsel to act as co-leads in derivative litigation without reservation. *See, e.g.*, *Freeman on behalf of Tesla, Inc. v. Musk*, 324 F.R.D. 73, 87 (D. Del. 2018) (appointing a group of seven institutional investors and three law firms as co-lead plaintiffs and co-lead counsel); *In re Wells Fargo & Co. S'holder Deriv. Litig.*, No. 16-cv-05541-JST, 2017 WL 130282, at *3 (N.D. Cal. Jan. 12, 2017) (appointing group of two institutional investors and their respective counsel co-lead plaintiffs and co-lead counsel); *In re Inv'rs Bancorp, Inc. Stockholder Litig.*, C.A. No. 12327-VCS, 2016 WL 4257503, at *5 (Del. Ch. Aug. 12, 2016) (appointing two stockholders and their respective counsel co-lead plaintiffs and co-lead counsel, focusing primarily on their effort to obtain company records to "provide[] more factual fodder for counsel to work with should they be called to defend their pleading against alleged failures to meet the more precise pleading standards contemplated by Rule 23.1"); *Horn v. Raines*, 227 F.R.D. 1, 3-4 (D.D.C. 2005) (appointing group of two institutional investors and their respective counsel co-lead plaintiffs and co-lead counsel).

In fact, many of the largest and most successful derivative actions were cases with co-lead plaintiffs and/or co-lead counsel. For example, the *In re UnitedHealth Grp. Inc. S'holder Deriv. Litig.*, No. 0:06-cv-01216-JMR-FLN (D. Minn.), had eight separate public pension fund plaintiffs and two co-lead counsel – BLB&G and G&E – and settled for $920 million and *In re Freeport-McMoRan Copper & Gold Inc. Deriv. Litig.*, C.A. No. 8145-VCN (Del. Ch.), had five co-lead plaintiffs – including Amalgamated – and four co-lead counsel – including BLB&G and G&E – and settled for $153.75 million.

In the PSLRA context, the Third Circuit has made clear that a group of investors – such as Amalgamated, Cambridge, and Clinton – can jointly serve as lead plaintiffs and act in the best interest of the remaining shareholders. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001). Specifically, the *Cendant* court held that a small, cohesive group of sophisticated investors that has demonstrated its ability to vigorously prosecute the case and monitor counsel is an ideal group to jointly lead class litigation. *See id.* at 268 (affirming appointment of group of three pension funds as lead plaintiff when there was no "reason to doubt that its members could operate effectively as a single unit"). Although *Cendant* was decided under the provisions of the PSLRA, not Rule 23.1, its reasoning, particularly as it concerns a focus on vigorous and effective cooperation by unrelated investors, ought to be persuasive in the derivative context as well. Defendants appear to agree, relying almost exclusively on PSLRA cases in their Opposition Brief. *See* ECF No. 65 at 4-5.

Following *Cendant*, this Court, as well as countless others, consistently have appointed lead plaintiff groups that are similar in size, structure, and sophistication to the Proposed Co-Lead Plaintiffs. Tellingly, Defendants fail to cite the PSLRA cases from this District appointing groups of institutional investors as co-leads plaintiffs. *See, e.g.*, *Cortese v. Radian Grp. Inc.*, No. 07-3375, 2008 WL 269473, at *2, 7 (E.D. Pa. Jan. 30, 2008) (appointing group of two institutional investors as lead plaintiff when their chosen counsel "appears to be qualified" and their interests "appear well aligned with the interests of the putative class"); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2004) (appointing group of three institutional investors as lead plaintiff when they hired "competent and experienced counsel" and "[t]here [was] no evidence of conflict between this plaintiff and other class members"); *Greater Pa. Carpenters Pension Fund v. Adolor Corp.*, No. Civ.A. 04-CV-1728, 2004 WL 3019235, at *3 (E.D. Pa. Dec. 29, 2004) (appointing

group of two institutional investors as lead plaintiff when there was "no evidence of antagonism between the interests of Movants and the interests of the other members of the class"); *Janovici v. DVI, Inc.*, No. Civ.A.2:03CV04795-LD, 2003 WL 22849604, at *12 (E.D. Pa. Nov. 25, 2003) (appointing group of two institutional investors and one individual investor as lead plaintiff when opposing movants submitted no proof that the group would be unable to oversee counsel or the litigation); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("In light of the magnitude of this case," the court appointed "three lead plaintiffs" and their respective "chosen competent, experienced counsel.").

      Not only have the Proposed Co-Lead Plaintiffs and Counsel worked cooperatively in this matter, but they also have a history of working cooperatively together. S+S and BLB&G currently serve as co-lead counsel in various derivative and securities litigation. *See Alphabet S'holder Deriv. Cases*, JCCP No. 4877, Stipulation and Order Appointing Co-Lead Counsel and Setting Case Schedule (Cal. Super. Ct. Jan. 3, 2017); *McWilliams v. Evoqua Water Techs. Corp.*, No. 1:18-cv-10320, Stipulation and Order Appointing Louisiana Sheriffs' Pension & Relief Fund and City of Omaha Police and Fire Retirement System as Lead Plaintiff and Approving Their Selection of Lead Counsel (S.D.N.Y. Jan. 31, 2019); *Ark. Teacher Ret. Sys. v. Insulet Corp.*, No. 1:15-12345, Memorandum and Order (D. Mass. Mar. 31, 2016) (BLB&G and S+S appointed as co-lead counsel for plaintiffs and thereafter the settlement class). Likewise, G&E and BLB&G have worked together on numerous cases, including many of the largest derivative actions, such as: *Freeport-McMoran*, where there were four co-lead counsel and a $153.75 million settlement; *In re News Corp. S'holder Litig.*, C.A. No. 6285-VCN (Del. Ch.), where there were two co-lead counsel and a $150 million settlement; and *City of Monroe Emps.' Ret. Sys. v. Murdoch*, C.A. No. 2017-0833-AGB (Del. Ch.), where there were two co-lead counsel and a $90 million settlement.

In light of the Proposed Co-Lead Plaintiffs and Counsel's proven track record of cooperation, and the overwhelming weight of legal authority, there simply is no reason to deny Amalgamated, Cambridge, and Clinton the opportunity to continue to prosecute (and jointly face the significant risks and potential benefits of) this complex derivative action. The (largely decades old) case law cited by Defendants does not counsel to the contrary. Certainly, none of the cases on which Defendants rely involves the instant scenario in which there is no disagreement among the plaintiffs seeking a leadership position and the current Lead Plaintiff and counsel have invited additional plaintiffs and their counsel to join the leadership structure.

For example, Defendants cite *Party City* to call into doubt the propriety of appointing multiple lead plaintiffs and counsel. *See* ECF No. 65 at 4. But, the court there did, in fact, appoint two lead plaintiffs, noting that where, much like here, "the interests of proposed lead plaintiffs are aligned, concerns regarding the division of authority and dilution of control are not paramount." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 114 (D.N.J. 1999). The *Party City* court also appointed each of the lead plaintiff's chosen law firms as co-lead counsel. *Id.* at 116 (noting that both firms had "experience in prosecuting complex securities actions and are qualified to represent the Proposed Class in the instant action"); *see also In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (appointing two law firms as co-lead counsel, albeit for the same lead plaintiff, noting that plaintiff is entitled to select and retain counsel to represent the class, subject to court approval).[5]

---

[5]  Defendants also rely on *In re Milestone Sci. Sec. Litig*, 183 F.R.D. 404 (D.N.J. 1998), in which the court appointed a group of related investors lead plaintiffs under the PSRLA, but denied their request to have multiple law firms appointed co-lead counsel. *Milestone Scientific* is a 20-year-old, out-of-district case that has been called into doubt. *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001) (noting that, contrary to the language in *Milestone Scientific*, "[t]he weight of the case law suggests that the trial court has the discretion to designate a triumvirate of unrelated persons as a lead plaintiff" and appointing group of unrelated investors

The sole derivative matter Defendants hold up as an example that a multi-plaintiff/counsel leadership structure would inure to the shareholders' detriment is readily distinguishable. Indeed, in *Deborah G. Mallow Ira Sep Inv. Plan v. McClendon* (ECF No. 65 at 5), the court found it altogether unnecessary to appoint any lead plaintiff. No. CIV-12-436-M, 2012 WL 2886677, at *3 (W.D. Okla. July 13, 2012). As such, the general rule that lead plaintiff(s) should be able to select their own counsel, did not apply. Further, the *McClendon* court found that the proposed co-lead counsel, by virtue of their submissions to the court, had "demonstrated their inability to work efficiently and produce consistent and coherent legal documents"; that two of the proposed three co-lead counsel, in a separate matter, "stand in a lawyer-client relationship to each other"; and that yet another proposed co-lead law firm was simply using its application as a "tactical maneuver" to "have a second chance to be appointed lead counsel" after the derivative action they had initially pursued was stayed. *Id*. at *4-5. The opposite is true in this case, where counsel have shown that they work well together and there is no indication of any conflict of interest.

In sum, Proposed Co-Lead Plaintiffs, invited by Amalgamated to join the leadership structure, more than satisfy the *McNamara* factors as set forth in their Opening Brief. Besides Defendants, who offer nothing besides empty hyperbole, and who ought to not be entitled to pick their adversary, no one has taken issue with Cambridge and Clinton's appointment as co-lead plaintiffs. Proposed Co-Lead Plaintiffs and their respective counsel thus respectfully reiterate their request to be added to the leadership structure in this case as additional Co-Lead Plaintiffs and Counsel.

---

as co-lead plaintiffs and their three respective law firms as co-lead counsel). Proposed Co-Lead Plaintiffs thus submit that *Milestone Scientific* is not instructive here.

9

## II. CONCLUSION

For the reasons set forth above, and in their Opening Brief, Amalgamated, Cambridge, and Clinton respectfully request that the Court grant their Motion to amend the March 29 Order and add Cambridge and Clinton and their respective counsel, BLB&G and G&E, as additional Co-Lead Plaintiffs and Counsel for this action.

Dated:  February 15, 2019             **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 /s/ *Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV (*pro hac vice*)
Judith S. Scolnick (*pro hac vice*)
Donald A. Broggi (P.A. I.D. 85514)
Jonathan M. Zimmerman (P.A. I.D. 322668)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
jscolnick@scott-scott.com
dbroggi@scott-scott.com
jzimmerman@scott-scott.com

*Lead Counsel for Plaintiffs*

Michael J. Barry (PA I.D. 69122)
Viola Vetter (PA I.D. 206277)
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Facsimile:  (302) 622-7100
mbarry@gelaw.com
vvetter@gelaw.com

*Counsel for Plaintiff the Charter Township of Clinton Police & Fire Pension Fund and [Proposed] Co-Lead Counsel for Plaintiffs*

Mark Lebovitch
David Wales
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
markl@blbglaw.com
DWales@blbglaw.com

*Counsel for Plaintiff the City of Cambridge Retirement System and [Proposed] Co-Lead Counsel for Plaintiffs*

Sheryl L. Axelrod (PA I.D. 70959)
**THE AXELROD FIRM LLC**
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
Telephone: (215) 461-1768
Facsimile: (215) 238-1779
saxelrod@theaxelrodfirm.com

*Liaison Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

                                                */s/ Thomas L. Laughlin, IV*
                                                Thomas L. Laughlin, IV (*pro hac vice*)