**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE UNIVERSAL HEALTH SERVICES, INC., DERIVATIVE LITIGATION | CIVIL ACTION NO. 17-02187 |
|  | Honorable Joel H. Slomsky |
| This Document Relates To: All Actions |  |

**DEFENDANTS' [PROPOSED] RESPONSE TO**
**PLAINTIFFS' PROPOSED SUPPLEMENTAL BRIEF**

As in their previous filings, Plaintiffs again fail to reckon with the substantial pleading burden that Rule 23.1 and Delaware law imposes on them. The Complaint is missing what a derivative action needs to survive Plaintiffs' failure to make a demand on the Board. A pinch of "inference" here and a dash of "averment" there does not amount to ***particularized factual allegations*** that UHS's directors were ***incapable*** of exercising business judgment on whether to bring this lawsuit on the Company's behalf because a majority of them face a ***substantial threat of personal liability***, or are beholden to others who do.[1]

To that end, Plaintiffs do not state with particularity facts that support either their lead argument that directors "orchestrated" an illegal scheme, or their fallback *Caremark* argument that directors "consciously disregarded" red flags that the scheme was taking place. *See* Defs' Br. 13-21. Neither Plaintiffs' oral argument, nor their post-argument brief, points to particularized allegations supporting either theory of director liability and demand futility.

---

[1] *See* Defs' Br. 10-11 (citing Rule 23.1(b)(3); *Sandys v. Pincus*, 152 A.3d 124, 128 (Del. 2016); and *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)).

As an initial matter, Plaintiffs' new brief continues their retreat from the more audacious demand-futility theories pled in the Complaint. Plaintiffs' allegation that UHS's directors "encouraged and orchestrated" an illegal admission scheme through their review of hospital business plans, AC ¶ 97, gets only a half-hearted mention. As Defendants have shown, Plaintiffs' cherry-picked allegations about those plans do not come close to detailing that the directors' themselves perpetrated any fraud. And Plaintiffs have long since abandoned the Complaint's unsupported theory that various directors lacked independence from Alan Miller, the Chairman of UHS's Board. *See* Defs' Reply in Support of Mot. to Dismiss 12-13.

Plaintiffs therefore retreat to their *Caremark* theory: UHS's directors are liable because, acting in bad faith, they deliberately ignored red flags warning them that patients were being forcibly committed through overuse of the suicidal ideation code. Plaintiffs' allegations—including some they try out for the first time in their post-argument brief (*see* Br. 7)—do not plead what is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). None of these last-ditch arguments point to particularized allegations that satisfy *either* of the *Caremark* requirements: that UHS's Board (i) was made aware of red flags of rampant misconduct, yet (ii) "consciously disregard[ed] its duty" to address the misconduct. *Melbourne Mun. Firefighters' Pension Tr. Fund ex rel. Qualcomm, Inc. v. Jacobs*, No. 10872, 2016 WL 4076369, at *8 (Del. Ch. Aug. 1, 2016).

*First*, the allegation that the Board knew DOJ was *investigating* "medical necessity issues and billing for services not eligible for payment" is not a particularized allegation that the Board was aware that fraud was, in fact, taking place. *See* Defs' Br. 18. No Delaware court has *ever* held that a mere investigation is a red flag for *Caremark* purposes. *See, e.g.*, *La. Mun. Police*

*Emps' Ret. Sys. v. Lennar Corp.*, C.A. No. 7314, 2012 WL 4760881, at *4 (Del. Ch. Oct. 5, 2012) (rejecting a potential *Caremark* claim premised on pending investigations because they reflect only "actions by regulators, not wrongdoing by companies").

Plaintiffs nevertheless make (at Br. 3) the remarkable assertion that "[t]he DOJ Civil Division would not be investigating Universal if there were no issues surrounding Universal['s] improper revenue stream." The directors of any company under investigation, as Plaintiffs see things, must presume guilt and act accordingly, on pain of personal liability. It should go without saying that is not the law.

In any event, Plaintiffs have not pleaded with particularity that the DOJ investigation focuses on an alleged company-wide scheme to trick walk-in patients into professing suicidal thoughts and then lock them in on that basis. See AC ¶¶ 115, 116, 118-19, 121-22, 151. Plaintiffs rely on UHS's disclosures that DOJ's investigation focuses on "medical necessity issues" including "admission eligibility, discharge decisions, length of stay, and patient care issues." Br. 2 (quoting AC ¶ 151). Those disclosures, though, do not describe the supposed false-imprisonment scheme conjured up by *BuzzFeed* and Plaintiffs' Complaint. They thus are not particularized evidence that UHS's directors *knew* that DOJ was focused on such a scheme—let alone that they *also knew*, as a result, that such a scheme was happening on their watch. *See, e.g., Jacobs*, 2016 WL 4076369, at *8 (asking if "the board had knowledge of certain 'red flags' indicating corporate misconduct").

Plaintiffs attempt to fill this hole in their pleading with proclamations that the Court "must construe" their generalized allegations about the DOJ investigation as stating particularized facts that the Board knew of the existence of a widespread suicidal-ideation fraud. Br. 3-4. Not so. Although Plaintiffs are entitled to reasonable inferences from any particularized facts they plead,

they are not entitled to have the Court *infer the particularized factual allegations themselves* based only on Plaintiffs' own speculation.

*Second*, Plaintiffs do not dispute that "the suicidal ideation code was purely non-monetary—just a symptom—and that physicians made the admissions decisions." Br. 4. Accordingly, a billing-fraud scheme based on suicidal-ideation coding makes no sense. Insurers pay for patient days based on diagnoses, not mere symptoms.[2] There is no dispute that suicidal ideation is a symptom not a diagnosis, that it is coded only after the patient is discharged, and that it results in no additional revenue to the hospital. *Id.* at 6.

Even still, Plaintiffs argue, data recited in union letters and *BuzzFeed* that UHS used that non-revenue-generating code more than other hospitals had to be a red flag to UHS's directors. According to their theory, the directors must have divined from the fact that UHS *coding staff* entered a suicidal-ideation code *after discharge*, that *clinicians* at UHS hospitals were fraudulently committing thousands of healthy patients when they first presented to the facility. That is preposterous on its face, and not nearly pleaded with particularity.

Even more to the point, Plaintiffs ignore the undisputed fact—evident in documents incorporated into the complaint—that UHS's directors *investigated* the coding data presented to them and concluded that it was ***not*** an alarming red flag of wrongdoing. *See* Defs' Ex. D & Ex. T.[3] The directors learned that, because not a penny of reimbursement turns on whether hospitals code patients for suicidal ideation, many of UHS's peer hospitals *did not use the code at all* or

---

[2] The Court asked whether suicidal ideation is a "CPT" code. It is an "ICD" code. Whereas CPT codes denote procedures, ICD codes denote symptoms and diagnoses. ICD codes for symptoms, such as the suicidal-ideation code, are not used to justify admissions for billing purposes. *See* Ctrs. for Medicare & Medicaid Servs., *ICD-10-CM Official Guidelines for Coding and Reporting FY 2019* at 107 (Oct. 2018) ("Codes for symptoms . . . are not to be used as principal diagnosis when a related definitive diagnosis has been established," and a "principal diagnosis" is "th[e] condition established after study to be chiefly responsible for occasioning the admission of the patient to the hospital."), https://go.cms.gov/2JY1O9g.

[3] "Ex." refers to exhibits to Defendants' motion to dismiss and (for Exhibit T) their reply brief.

4

*systematically underused* it.  The coding disparity between UHS and its peers, the Board concluded (and explained to the unions and *BuzzFeed*, *see id.*), was a function of these different coding practices, not evidence of wrongdoing.  *See* Defs' Mot. to Dismiss Reply Br. 8-9.

For example, *BuzzFeed* asserted—and Plaintiffs continue to emphasize (*see* Br. 5)—that use of the suicidal-ideation code increased substantially at PSI hospitals after UHS acquired them.  But UHS's directors knew that *BuzzFeed*'s own data shows why:  It is beyond dispute that PSI infrequently coded suicidal ideation, and that many PSI hospitals *never used the code at all*.  UHS's publicly available response to *BuzzFeed* (Ex. T) included charts like this one, provided to the Company by *BuzzFeed* itself, for Riveredge Hospital—a large PSI facility that UHS acquired in November 2010:



For Plaintiffs' red-flag explanation of this data to hold up, one has to believe UHS's directors made this utterly implausible conclusion: Riveredge Hospital (and other PSI hospitals) ***never*** admitted even a ***single patient*** who had suicidal thoughts during all of 2009, 2010, and the first quarter of 2011.  Then, starting in mid-2011, every patient coded as suicidal at that hospital was so coded

5

only because UHS had imposed its illegal scheme to involuntarily commit healthy patients. That's a frivolous theory of the directors' substantial likelihood of personal liability.

And that's not all. The Company also had a "nationally recognized independent firm . . . audit and assess UHS' coding, . . . . specifically their coding for suicidal ideation." Ex. T at 2445. That firm lauded "UHS' on-going efforts to promote and support high quality and accuracy in coding." *Id.* In sum, the Board looked hard and found nothing wrong. That is the opposite of directors who are acting in "bad faith" and with "conscious disregard," which is what Plaintiffs must plead with particularity. *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, C.A. No. 12151, 2017 WL 6452240, at *14 (Del. Ch. Dec. 18, 2017) (quotation marks omitted).

Plaintiffs also invoke their allegation that, at a hospital UHS acquired in 2010, involuntary admissions increased by 470% from 2009 to 2013. Br. 5 (citing AC ¶ 147). But UHS acquired that facility only in *November* of 2010—a year during which (according to BuzzFeed's own data) such admissions had already increased 236%. In any case, this is information about only one of UHS's hundreds of hospitals, and Plaintiffs do not assert that the Board knew it. Instead, they claim only that the Board knew that DOJ was investigating that hospital, and Medicare suspended payments to it. Br. 5. Such allegations are nowhere near particularized enough to support the inferences of directors' bad faith that Plaintiffs seek to draw from them.

***Third***, Plaintiffs cobble together allegations that, in their view, show that UHS not only improperly admitted patients but also held them for longer than warranted.[4]

Plaintiffs' reliance on management-level Compliance Committee minutes is misplaced. Br. 7; *see also id.* (acknowledging these items are not specifically pleaded). The *directors'*

---

[4] Plaintiffs also complain, without elaboration, of "improper transfers to acute care." Br. 7. As Defendants have explained, that allegation has nothing to do with behavioral-health care at UHS. Defs' Reply in Supp. of Mot. to Dismiss 11. In the same sentence, Plaintiffs say without authority that some "scheme" was "discussed by [UHS's] Chairman." Br. 6. That baseless claim is mystifying.

knowledge and conscious disregard of wrongdoing is what matters for demand futility, and only one of the seven directors (Marc Miller) is alleged to have seen the documents that Plaintiffs cite. *Id.* Plaintiffs point out that *officer* defendants were present at the meetings, but that is beside the point, as only the *directors'* likelihood of liability is at issue under Rule 23.1.



That alone defeats Plaintiffs' claim. *See South v. Baker*, 62 A.3d 1, 15 (Del. Ch. 2012) (to survive motion to dismiss, plaintiff must plead that the "board had notice of serious misconduct and simply failed to investigate").

But Delaware directors are entitled to rely on reports by corporate employees within their area of expertise. 8 Del. C. § 141(e).

Last, Plaintiffs repackage *BuzzFeed*'s claim that Sharon Worsham, one of multiple divisional vice presidents at UHS, urged employees to hold patients for as long as possible. Br. 7-8; AC ¶¶ 134, 142-143. But neither Plaintiffs nor *BuzzFeed* suggests that any UHS director ***knew*** about Worsham's alleged pressure until they read the *BuzzFeed* article. The Company promptly responded that UHS's average length of stay is at or below national averages. Ex. T at 2447-2448. That is the end of the matter. *See, e.g.*, *Jacobs*, 2016 WL 4076369, at *9-*10 (board's

response to alleged red flags did not constitute bad faith where it was "based on the Board's views that [its] business practices were not, in fact," illegal).

Plaintiffs' supplemental brief does not move the needle. They fail by a longshot to plead with the requisite particularity that a majority of the UHS Board faced such a substantial likelihood of personal liability that Plaintiffs are excused from making a pre-suit demand. The Court should dismiss the Amended Complaint with prejudice.

Dated: June 17, 2019

MORGAN, LEWIS & BOCKIUS LLP

/s/ Steven A. Reed (*by permission*)
Steven A. Reed (Pa. ID 60145)
Jason H. Wilson (Pa. ID 208112)
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001

*Counsel for Defendants*

Respectfully submitted,

ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP

/s/ Gary A. Orseck
Gary A. Orseck (admitted *pro hac vice*)
Matthew M. Madden (admitted *pro hac vice*)
2000 K Street, N.W., 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: gorseck@robbinsrussell.com

*Counsel for Nominal Defendant Universal Health Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of June, 2019, I caused a true and correct copy of the foregoing Defendants' [Proposed] Response To Plaintiffs' Proposed Supplemental Brief to be served on the following counsel by email:

Thomas L. Laughlin, IV, tlaughlin@scott-scott.com
Judith S. Scolnick, jscolnick@scott-scott.com
Donald A. Broggi, dbroggi@scott-scott.com
Jonathan M. Zimmerman, jzimmerman@scott-scott.com

*Co-Lead Counsel for Plaintiffs*

Michael J. Barry, mbarry@gelaw.com
John C. Kairis, jkairis@gelaw.com
Viola Vetter, vvetter@gelaw.com

*Co-Lead Counsel for Plaintiffs*

Mark Lebovitch, markl@blbglaw.com
David Wales, DWales@blbglaw.com
Adam Wierzbowski, adam@blbglaw.com

*Co-Lead Counsel for Plaintiffs*

Sheryl L. Axelrod, saxelrod@theaxelrodfirm.com

*Liaison Counsel for Plaintiffs*

/s/ Gary A. Orseck

Gary A. Orseck