**PUBLIC REDACTED – ORIGINIAL FILED UNDER SEAL**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE UNIVERSAL HEALTH SERVICES, INC., DERIVATIVE LITIGATION | CIVIL ACTION NO. 17-02187 |
| | HONORABLE JOEL H. SLOMSKY |
| This Document Relates To: | |
| ALL ACTIONS | |

**PLAINTIFFS' [PROPOSED] SHORT SUPPLEMENTAL BRIEF IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS TO GIVE FURTHER GUIDANCE IN RESPONSE TO THE COURT'S QUESTIONS AT ORAL ARGUMENT**

Co-Lead Plaintiffs Amalgamated Bank, Trustee of the Longview Broad Market 3000 Index Fund, Longview LargeCap 500 Index Fund, Longview LargeCap 500 Index VEBA Fund, Longview Quant LargeCap Equity VEBA Fund, and Longview Quantitative LargeCap Fund, City of Cambridge Retirement System, and Charter Township of Clinton Police & Fire Pension Fund (collectively, "Plaintiffs") respectfully submit this short supplemental brief to give the Court further guidance in response to the questions asked by the Court during the May 31, 2019, oral argument held on the Defendants' motion to dismiss (the "Oral Argument").

*First*, during the Oral Argument, the Court asked about the focus of the U.S. Department of Justice's ("DOJ") current civil and criminal investigation of Universal Health Services, Inc. ("Universal"), and specifically, the basis for Plaintiffs' allegation that the DOJ's focus includes improper billing based on over-admitting patients by mischaracterizing them as suicidal. Such conduct violates the federal False Claims Act and state laws and is one basis of the DOJ's investigation.

**PUBLIC REDACTED – ORIGINIAL FILED UNDER SEAL**

Universal's minutes of the board of directors (the "Board") and public filings reflect that the Board repeatedly learned about the DOJ's investigation and, specifically, that the investigation focused on, *inter alia*, improper patient admissions, discharge decisions, billing, length of stay, patient care, and billing for medically unnecessary treatment. For example, Universal's Form 10-Q filed with the U.S. Securities and Exchange Commission ("SEC") on August 8, 2018, signed by Defendant, Chairman of the Board, and Chief Executive Officer ("CEO") Alan Miller, states, in relevant part:

> The DOJ has advised **us** that the civil aspect of the coordinated investigation referenced above is a False Claims Act investigation focused on billings submitted to government payors in relation to services provided at those facilities. While there have been various matters raised by DOJ during the pendency of this investigation, ***DOJ Civil has advised that the focus of their investigation is on medical necessity issues and billing for services not eligible for payment*** due to non-compliance with regulatory requirements relating to, among other things, ***admission eligibility, discharge decisions, length of stay and patient care issues***. ***It is our understanding that the DOJ Criminal Fraud Section is investigating issues similar to those focused on by DOJ Civil*** and the other related agencies involved in this matter.

Compl. ¶151.[1]

As detailed throughout Plaintiffs' Verified Shareholder Derivative Consolidated Amended Complaint (the "Complaint"), the letters from Change to Win ("CtW") and the Service Employees International Union ("SEIU") to the Universal Board, as well as the *BuzzFeed News* Exposé, discussed at length Universal's various efforts to ***improperly drive revenue***, including by improperly characterizing patients as suicidal, so that Universal could hold them as inpatients and bill their insurers for their stays. Thus, in the Complaint, Plaintiffs specifically allege, in relevant part:

> [T]he most egregious misconduct relates to illicit admission of patients regardless of medical necessity. Universal lured unsuspecting patients into its behavioral health facilities by offering free wellness examinations. Once in the facility,

---

[1]  Unless otherwise indicated, all emphasis is added.

> Universal employees tricked patients into committing themselves, exaggerated patient symptoms, manipulated patients' answers to make them seem suicidal, and held patients against their will until the patients' insurance policy ran out in order to increase revenues at those facilities in violation of the False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "FCA").

*Id.* ¶7.

At the motion to dismiss stage, the Court must construe the Complaint in the light most favorable to Plaintiffs, giving Plaintiffs the benefit of all reasonable inferences. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228, 231 (3d Cir. 2008) (affirming that, when evaluating a Rule 12(b)(6) motion, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff,'" and "draw all inferences from the facts alleged in the light most favorable to [plaintiff]"). Under this standard, on a motion to dismiss, the Court ***must*** find that when Chairman of the Board and CEO Alan Miller stated that "[t]he DOJ has advised ***us***" (Compl. ¶151), he meant the Board; and that when he said it is "***our*** understanding that the DOJ Criminal Fraud Section is investigating issues similar to those focused on by DOJ Civil and the other related agencies involved in this matter" (*id.*), he was talking about the Board's understanding.

The DOJ Civil Division would not be investigating Universal if there were no issues surrounding Universal improper revenue stream. Certainly, at the motion to dismiss stage, the Court must construe the Complaint in the light most favorable to Plaintiffs and interpret such allegations to infer that was why the DOJ Civil Section was investigating Universal. *See Phillips*, 515 F.3d at 228, 231.

Moreover, the Court must construe Plaintiffs' averment that the Universal Board was informed that the DOJ Criminal Fraud and Civil Sections were investigating Universal for improper patient admissions, discharge decisions, billing, length of stay, patient care, and billing for medically unnecessary treatment issues to mean that the Board was informed that the DOJ

3

Criminal Fraud and Civil Sections were investigating Universal for the very issues Plaintiffs raise in their Complaint, including that Universal improperly characterized patients as suicidal, to involuntarily keep them and bill them and their insurers for unnecessary stays and treatment.

*Second*, during the Oral Argument, Your Honor asked about that very issue, specifically, the factual basis for Plaintiffs' allegations that Universal improperly characterized patients as suicidal, when Defendants have asserted that the suicidal ideation code was purely non-monetary – just a symptom – and that physicians made the admissions decisions.

Plaintiffs allege in the Complaint that Universal improperly pressured physicians to characterize patients as suicidal at intake, so that they became forced inpatients whose stays and treatment for alleged suicidal ideation could then be billed to their insurers by Universal.

***Plaintiffs allege that Universal's scheme included pressuring doctors to code patients after-the-fact as suicidal to justify their forced, medically unnecessary stays and treatment.*** Thus, for example, Plaintiffs alleged in the Complaint that "[a] manager who worked in billing at one of the facilities Universal acquired stated that the billing department 'had to adjust to [Univeral's] ways[,]' which entailed 'build[ing] the severity level as much as we could[,]' including representing mere depression as suicidal ideation, to 'better support admission.'" Compl. ¶136 (alterations added and in original).

The Board received facts and figures strongly indicating this was happening ***across the Universal system***. The CtW letter received by the Board in April 2014 expressed specific concerns regarding Universal's billing practices and inpatient psychiatric facilities' use of the suicidal ideation code at a much more frequent rate compared to other facilities. *Id*. ¶¶182-84.

Likewise, the *BuzzFeed* Exposé described that suicidal ideation appears in more than half of all Medicare claims that Universal behavioral facilities submitted, which is ***four and a half***

*times* the rate for non-Universal behavioral facilities. *Id*. ¶135. In addition, in the first full year after Universal's acquisition of Psychiatric Solutions, Inc., its use of the billing code for suicidal ideation in Medicare claims increased by *six times*. *Id*.

The Board also *knew* about the problems and issues at River Point, a Universal facility. Three former River Point therapists explained that after Universal acquired the facility, it became standard to file actions under the Baker Act to involuntarily commit patients with insurance and to discharge patients without insurance. *Id*. ¶147. In the year before Universal's acquisition, River Point filed 238 petitioners under the Baker Act, and in the year after the acquisition, that number increased to 1,362, *a 470% increase*. *Id*. The Board *knew* that CMS and the state of Florida suspended Medicare payments to River Point. *Id*. ¶¶149, 188. ***The Board also knew, and it was repeatedly advised, that River Point was under DOJ investigation***. *Id*. ¶¶113, 123, 168. Looking at the Complaint in the light most favorable to Plaintiffs, the Court must construe this to refer to the same kinds of issues that the Board knew the DOJ was investigating, as discussed above, *i.e.*, improper patient admissions, discharge decisions, billing, length of stay, patient care, and billing for medically unnecessary treatment issues, among them, the involuntary over-admitting and treating of patients by mischaracterizing them as suicidal.

***Plaintiffs set forth in their Complaint that Universal pressured doctors to involuntarily over-admit patients to increase billings, and that the Board was on notice of same***. For example, an SEIU letter to Universal's Audit Committee described the whistleblower lawsuit filed by Dr. Klotz, "who alleged that Universal 'categorized patients as suicidal when the likelihood was extremely low' to make these patients qualify for inpatient psychiatric care that the federal and state governments would then reimburse." *Id*. ¶173. A CtW letter to the Universal Board also stated that Dr. Klotz's *qui tam* action against Universal involved a facility with a high rate of

suicidal ideation and that it was also under DOJ investigation (after it received a subpoena in 2013). *Id*. ¶184.

Likewise, numerous other factual allegations in the Complaint support these allegations. For example:

- "Former admissions workers from three Universal facilities interviewed for the [*BuzzFeed*] Exposé stated that they learned how to turn passing statements that individuals made during assessments into more dangerous evaluations – admissions counselors stated they were told to 'play up the criteria' to obtain approval for hospitalization from insurers." *Id*. ¶132; and

- "Clinical staff interviewed at Salt Lake, for example, confirmed that they were instructed to 'chart to the negative,' or emphasize 'the most troubling behavior to make [an assessed individual] sound less stable.' Another intake worker at Millwood Hospital in Arlington, Texas, confirmed that suicidal ideation became a 'go-to formula' that Universal used to justify almost any admission '[b]ecause that's the way to make sure everything gets paid for.' And a therapist who performed assessments for University Behavioral Health, a Universal hospital in Denton, Texas, and a former clinician at Salt Lake confirmed that through repeated lines of questioning and prodding about hypothetical suicidal ideation, Universal staff would obtain answers that could be twisted into plans to carry out suicide, so that they could justify patient admissions." *Id*. ¶133 (alterations in original).

It is undisputed that the Board members all received the *BuzzFeed* Exposé.

In short, the answer to Your Honor's questions about what the scheme was and how it worked is that Universal pressured physicians to over-admit patients, characterize them as suicidal, force them to stay at the facilities, give them medically unnecessary treatment, and then code them after-the-fact as suicidal in order to bill their insurers as much as possible. The beneficiary of the scheme is Universal.

*Finally*, although the defense seeks to limit Plaintiffs' claims to improper admissions through mischaracterizing patients as suicidal, the allegations in the Complaint are not so limited. The scheme understood by the Board, as discussed by its Chairman, included various aspects of improper revenue generation, including through failing to discharge patients when ready, improper

length of stays based on insurance reimbursement, and not medical determination, and improper transfers to acute care.



And, pursuant to the Delaware Chancery Court's Order, dated October 12, 2017, the above-quoted documents (which Universal produced to Plaintiffs in response to Plaintiffs' 8 *Del. C.* §220 demand) are deemed incorporated by reference into the pleadings. *See City of Cambridge Ret. Sys. v. Universal Health Servs., Inc.*, C.A. No. 2017-0322, Memorandum and Opinion (Del. Ch. Oct. 12. 2017).

As Plaintiffs further alleged in the Complaint:

- 

7

[REDACTED] bears a striking resemblance to the practice complained of by a Highlands psychiatrist to the BH divisional Vice President, Sharon Worsham ('**Worsham**'), in a 2014 email obtained by *BuzzFeed*, in which the psychiatrist stated that 'I am, in particular, deeply disturbed about the efforts to extend lengths of stay[.] . . . Doctors are publicly shamed by asking them to justify discharging a patient "early" before the end of their insurance authorization.'" Compl. ¶134 (alterations added and in original; emphasis in original);

- "Three former heads of Universal behavioral health facilities corroborated that the mantra of Worsham was: 'Don't leave days on the table.'" *Id*. ¶142; and

- "The head of Austin Lakes Hospital in Texas until 2014 stated that it was 'common practice[,]' . . . openly discussed in regional conferences as well as [during] phone calls with facility executives,' that '[i]f an insurance company gave you so many days, you were expected to keep the patient there that many days[.]'" *Id*. ¶143 (alterations in original).

Thus, as detailed in the Complaint, the focus of the DOJ investigation includes, as Universal admits, "***discharge decisions [and] length of stay***." *Id*. ¶151 (emphasis in original).

As set forth in the Complaint, briefing, Oral Argument, and this short supplemental brief, Plaintiffs have more than adequately alleged demand futility and more than adequately pled all of their causes of action. Therefore, Defendants' motion to dismiss should be denied.

Dated: June 7, 2019

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 */s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV (*pro hac vice*)
Judith S. Scolnick (*pro hac vice*)
Donald A. Broggi (P.A. I.D. 85514)
Jonathan M. Zimmerman (P.A. I.D. 322668)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
jscolnick@scott-scott.com

8

**PUBLIC REDACTED – ORIGINIAL FILED UNDER SEAL**

dbroggi@scott-scott.com
jzimmerman@scott-scott.com

*Co-Lead Counsel for Plaintiffs*

Michael J. Barry (PA I.D. 69122)
John C. Kairis (*pro hac vice*)
Viola Vetter (PA I.D. 206277)
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Facsimile:  (302) 622-7100
mbarry@gelaw.com
jkairis@gelaw.com
vvetter@gelaw.com

*Co-Lead Counsel for Plaintiffs*

Mark Lebovitch
David Wales (*pro hac vice* pending)
Adam Wierzbowski (*pro hac vice* pending)
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
markl@blbglaw.com
DWales@blbglaw.com
adam@blbglaw.com

*Co-Lead Counsel for Plaintiffs*

Sheryl L. Axelrod (PA I.D. 70959)
**THE AXELROD FIRM, PC**
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
Telephone: (215) 461-1768
Facsimile:  (215) 238-1779
saxelrod@theaxelrodfirm.com

*Liaison Counsel for Plaintiffs*